# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 11-287 |
| STEVE A. WHITE | SECTION I |

## ORDER & REASONS

Before the Court is *pro se* defendant Steve A. White's motion[1] for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] The Court finds that White has not presented extraordinary and compelling reasons justifying his release. Furthermore, after considering the applicable factors in 18 U.S.C. § 3553(a), the Court concludes that compassionate release is not warranted. Accordingly, the Court denies the motion.

### I.

On May 17, 2012, White pleaded guilty pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure to Count 1 of a superseding indictment, which charged him with conspiracy to distribute and to possess with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. § 846.[3] On September 27, 2012, the Court sentenced White to a total term of imprisonment of 300 months.[4] White is currently incarcerated at

---

[1] R. Doc. No. 197.
[2] R. Doc. No. 199.
[3] R. Doc. No. 51; R. Doc. No. 84, at 1.
[4] R. Doc. No. 84, at 2.

FCI Yazoo City Low ("Yazoo City"); his projected release date is January 14, 2033.[5] On April 3, 2020, White filed a motion[6] for a sentence reduction under Section 404 of the First Step Act of 2018, which the Court denied.[7]

White contracted COVID-19 while incarcerated, perhaps in March or April 2020.[8] In November 2020, further testing indicated that White was not positive for COVID-19.[9] In May 2021, BOP administered both doses of the Pfizer COVID-19 vaccine to White.[10]

White now requests compassionate release under 18 U.S.C. § 3582(c)(1)(A).[11] He provides a copy of his request for compassionate release dated April 25, 2021, which was addressed to his warden.[12] White filed his instant motion on June 16, 2021.[13]

White argues that the risk of contracting COVID-19 again at Yazoo City is an extraordinary and compelling reason for release because he is an "at risk inmate"[14] and that "individuals with [his] medical conditions are at increased risk from the virus."[15] White claims to suffer from "[a]sthma, which has gotten worst [sic] since

---

[5] Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited July 15, 2021).
[6] R. Doc. No. 186.
[7] R. Doc. No. 196.
[8] R. Doc. No. 200-2, at 41, 64–65 (medical records filed under seal) (noting a positive COVID-19 test result in early April 2020).
[9] *Id.* at 55.
[10] *Id.* at 42, 58.
[11] R. Doc. No. 197.
[12] *Id.* at 3.
[13] *Id.* at 1.
[14] *Id.* at 16.
[15] *Id.*

[his] contracting of COVID-19."¹⁶ White also claims that he is being monitored for diabetes,¹⁷ and that his "body mass weight" is above 40, "making [him] overweight and even more at risk of fatal injury or death if I again catch Covid-19."¹⁸ Further, White argues that he is at greater risk of contracting COVID-19 because of Yazoo City's failure to follow infectious disease protocols.¹⁹ White also argues that the factors enumerated in 18 U.S.C. § 3553(a) and his post-sentencing rehabilitation efforts weigh in favor of compassionate release.²⁰

In response, the government concedes that White has exhausted his administrative remedies.²¹ However, the government argues that White's motion should be denied on the merits because the reasons he cites for his release are not extraordinary and compelling.²² The government explains that, although White alleges he suffers from medical conditions that may be extraordinary and compelling when viewed alongside the risk of contracting COVID-19, White has offered no

---

¹⁶ *Id.* at 3.
¹⁷ White's motion states that he is being "monitored for diabetes" by the medical staff at Yazoo City. *Id.* at 4. Health records submitted by the government demonstrate that "[p]rediabetes" is one of White's current health problems. R. Doc. No. 200-2, at 10. The Court construes White's motion liberally to mean that he suffers from prediabetes. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017).
¹⁸ R. Doc. No. 197, at 4. As with White's prediabetes, the Court liberally construes White's claim to mean that he has a Body Mass Index above 40, which exceeds the recommended threshold for obesity. *Alderson*, 848 F.3d at 419; *see also* Centers for Disease Control and Prevention, *About Adult BMI*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html (last visited July 15, 2021).
¹⁹ R. Doc. No. 197, at 6–9, 16–18.
²⁰ *Id.* at 19–20.
²¹ R. Doc. No. 199, at 3–4.
²² *Id.* at 4–14.

evidence to show—and the record does not show—that White suffers from such conditions as alleged.[23] Moreover, since White is now fully vaccinated against COVID-19, the government argues that "White's arguments related to COVID-19 are insufficient to warrant his release."[24]

**II.**

For a motion for compassionate release, generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[25] For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, whichever is earlier." *Id.*; § 3582(c)(1)(A).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c). The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

---

[23] *Id.* at 13–14.
[24] *Id.* at 13.
[25] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

4

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the Bureau of Prisons ("BOP")—not defendants on their own—could move for compassionate release. The First Step Act changed that. However, the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of them contradict 18 U.S.C. § 3582(c)(1)(A). For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons[.]"); *see also United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).

The Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Nonetheless,

the Fifth Circuit has also recognized that the policy statement may still "inform[] [its] analysis." *Thompson*, 984 F.3d at 433.

A prerequisite to granting compassionate release is that the defendant shows "extraordinary and compelling reasons warrant[ing]" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). *Shkambi* notwithstanding, the Sentencing Commission's policy statement may still "inform" this Court's analysis of whether White has presented an extraordinary and compelling reason. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *United States v. Helmstetter*, No. 92-469, 2021 WL 310355, at *5 (E.D. La. Jan. 29, 2021) (Africk, J.); *Perdigao*, 2020 WL 1672322 at *2.

### A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's compassionate release motion only after the defendant exhausts administrative remedies, or 30 days elapse after the defendant submits a compassionate-release request to the warden. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "not jurisdictional but . . . *is* mandatory") (emphasis in original). As stated, the government concedes that White satisfied this requirement.[26] Accordingly, the Court will consider the merits of White's motion. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

#### 1. *White's Medical Conditions*

---

[26] R. Doc. No. 199, at 3–4.

A prerequisite to granting compassionate release is that the defendant shows an extraordinary and compelling reason justifying it. The Sentencing Commission's policy statement, though not binding for compassionate release motions brought by prisoners, still "informs" this Court's analysis of extraordinary and compelling reasons. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *Shkambi*, 993 F.3d at 393 (noting the policy statement is not binding for *pro se* motions). Again, the policy statement provides four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

White's chief argument is that his alleged medical conditions, combined with the risk of contracting COVID-19 a second time while in custody, are extraordinary and compelling reasons for compassionate release. Specifically, White asserts that he has asthma, is overweight, and is prediabetic, and he argues that these conditions make him more vulnerable to severe infection if he contracts COVID-19 again.[27] The

---

[27] R. Doc. No. 197, at 3–4, 16–18.

7

government counters that White's health conditions do not constitute extraordinary and compelling circumstances and that White is now fully vaccinated against COVID-19.[28]

White's medical records do indicate that he has prediabetes.[29] The CDC has stated that "[h]aving either type 1 or type 2 diabetes can make you more likely to get severely ill from COVID-19."[30] Meanwhile, prediabetes is "a serious health condition where blood sugar levels are higher than normal, but not high enough yet to be diagnosed as type 2 diabetes."[31] For the instant motion, the Court assumes that having prediabetes may make a person become more severely ill from COVID-19. All the same, "[a]pproximately 88 million American adults—more than 1 in 3—have prediabetes."[32] This prevalence disfavors a finding of extraordinary circumstances to warrant compassionate release. *Thompson*, 984 F.3d at 432-33 (noting that "nearly half" of American adults have hypertension, rendering the condition far from "extraordinary."). Moreover, on balance other factors mitigate the risk of severe COVID-19 illness from White's prediabetes.

---

[28] R. Doc. No. 199, at 7–14.
[29] R. Doc. No. 200-2, at 10, 86.
[30] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 15, 2021).
[31] Centers for Disease Control and Prevention, *Prediabetes - Your Chance to Prevent Type 2 Diabetes*, https://www.cdc.gov/diabetes/basics/prediabetes.html (last visited July 15, 2021).
[32] *Id.*

White is now fully vaccinated against COVID-19.[33] COVID-19 vaccines "keep you from getting and spreading the virus that causes COVID-19," and "also help keep you from getting seriously ill even if you do get COVID-19."[34] White's vaccination status therefore weighs heavily against finding "extraordinary and compelling" circumstances for compassionate release. *See United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021) (Barbier, J.) (denying relief where "[d]efendant has already received the Pfizer COVID-19 vaccine" that is "highly effective at preventing COVID-19 and may also reduce the risk of serious illness in the case of a COVID-19 infection"); *United States v. Robinson*, 2021 WL 1723542, at *4 (W.D. La. Apr. 30, 2021) (finding that, given defendant's vaccination status, "even though Robinson does have serious medical conditions, there is no extraordinary and compelling reasons supporting compassionate release").

The record does not support White's remaining health contentions. In addition to prediabetes, White also claims to suffer from Body Mass Index above 40 and asthma that worsened after contracting COVID-19.[35] But White has not produced evidence to support these claims,[36] and White's health records, which were provided

---

[33] R. Doc. No. 200-2, at 42 and 58 (stating that White received his second dose of the "COVID-19 Pfizer-BioNTech" vaccine on May 26, 2021).
[34] Centers for Disease Control & Prevention, *Benefits of Getting a COVID-19 Vaccine,* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (updated June 15, 2021).
[35] R. Doc. No. 197, at 3.
[36] *See generally id.*

9

by the government and cover the last three years, do not substantiate his claims either.[37]

According to those records, for his weight, White lost over 80 pounds during 2020.[38] Based on his most recently documented height and weight, White qualifies as having normal or "healthy weight."[39] Similarly, for his asthma, BOP Health Services notes that White's symptoms improved after first being diagnosed with COVID-19.[40] White's records likewise indicate that in November 2020 he was labeled "asymptomatic" by BOP Health Services and did not test positive for COVID-19.[41] Since that time, White's records do not show that he has presented himself for asthma concerns despite seeking treatment for other, less serious conditions.[42]

White has failed to prove that he suffers from a medical condition from which he is not expected to recover. *See* U.S.S.G. § 1B1.13 cmt. 1(A). "[M]erely alleg[ing]" a serious medical condition is not enough—White must back it up with evidence, and he has not. *United States v. Wells*, No. 17-104, 2021 WL 199386, at *3 (E.D. La. Jan.

---

[37] *See generally* R. Doc. No. 200-2 (medical records, filed under seal).
[38] *Id*. at 13–14, 81; *see also id*. at 86 (documenting consultation in January 2020 about White's desire to follow low salt, low fat, and low sugar diet for cholesterol and glucose evaluation).
[39] *Id*. at 13–14, 81; Centers for Disease Control, *About Adult BMI*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html (last visited July 15, 2021).
[40] R. Doc. No. 200-2, at 61 (noting shortness of breath); *cf. id*. at 149 ("COVID 19 inmate screening conducted denies fever or shortness of breath. Complains of slight cough."); *cf. id*. at 65 (indicating prior complaint of fever).
[41] R. Doc. No. 200-2, at 8 and 55.
[42] R. Doc. No. 200-2, 2–7 (describing dermatological treatment). The Court does note however that BOP Health Services did prescribe an inhaler in April 2020 for "shortness of breath" related to "[u]nspecified abnormalities of breathing." *Id*., at 63.

20, 2021) (Barbier, J.) (concluding, after an exhaustive review of the defendant's medical records provided by the government, that the defendant had not carried his burden to show extraordinary and compelling reasons). *See also United States v. Rivas*, 833 F. App'x 556, 559 (5th Cir. 2020) (requiring the defendant to "provide evidence" that he was not likely to recover from his medical conditions).

Even taking these medical conditions–such as obesity and worsened asthma—*arguendo*, to be ones that White in fact suffers, here they would not rise to the level of terminal illness or substantially diminish White's ability to provide self-care from within Yazoo City. White's access to a prescription inhaler[43]—along with his ongoing ability to receive medical care for other issues[44]—evidences that he receives medical treatment to care for his health conditions. *See United States v. Mazur*, 2020 WL 2113613, at *3 (E.D. La. May 4, 2020) (Africk, J.) ("Courts have also taken into account the quality of healthcare provided to the defendant while incarcerated"); *see also United States v. Higginbotham*, 2020 WL 6393836, at *1 (M.D. Fla. Nov. 2, 2020) (finding that an inmate with obesity and asthma did not present extraordinary and compelling circumstances).

### 2. Other Possible Reasons

White also argues that Yazoo City's COVID-19 protocols are inadequate. Specifically, he claims that group housing in the low-security facility does not permit

---

[43] R. Doc. No. 200-2, at 45.
[44] *Id.* at 2–3.

adequate social distancing, and officials do not quarantine sick individuals or conduct sufficient testing to detect the spread of the virus.[45]

White's concerns regarding COVID-19 do not warrant compassionate release. First, the existence of COVID-19 at Yazoo City alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Second, the record does not support White's claims. White's medical records indicate that upon presenting suspected COVID-19 symptoms, he was quickly tested.[46] Later, even though BOP Health Services labeled White as asymptomatic and he received a negative test result, he was listed as being in quarantine.[47] Moreover, the BOP's published statistics indicate that Yazoo City currently has no cases of COVID-19 among either inmates or staff, and eighty inmates have recovered from the virus.[48] And White has been fully vaccinated for COVID-19.[49] Taken together, these factors do not justify finding extraordinary and compelling circumstances to warrant compassionate release. *See United States v. Lipscomb*, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021) ("What's more, [defendant's vaccination status] demolishes [his] conclusory contention BOP is not taking adequate precautions. Currently, tens—if not hundreds—of millions of Americans are scurrying to figure out how to get a

---

[45] R. Doc. No. 197, at 11–13, 16–17.
[46] R. Doc. No. 200-2, at 175 (noting suspected COVID-19 symptoms in early April 2020); *cf. id.* at 64 (noting positive COVID-19 test results on April 4, 2020).
[47] R. Doc. No. 200-2, at 8, 55.
[48] Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/# (last visited July 15, 2021).
[49] R. Doc. No. 200, at 42, 58.

vaccine. Yet Lipscomb already received both doses. This does not suggest BOP is taking COVID-19 lightly or not protecting Lipscomb.").

### C. Section 3553(a) Factors

Even if the Court were to find that White has presented extraordinary and compelling reasons, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," the Court concludes that compassionate release is not warranted. *See* 18 U.S.C. § 3582(c)(1)(A). The most applicable factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the "need for the sentence imposed– (A) to reflect the seriousness of the offense, [or] to promote respect for the law . . . ; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). After considering these factors, the Court concludes that a sentence reduction is inappropriate.

As part of the instant offense, White admitted to conspiring to sell heroin in New Orleans on three separate occasions and to possessing 111.2 grams of heroin on a fourth occasion.[50] The length of White's sentence is therefore justified chiefly as a means of reflecting the seriousness of the offense and to deter future similar conduct. 18 U.S.C. § 3553(a)(2)(A)–(B).

---

[50] R. Doc. No. 53, at 2–5 (factual basis).

13

Likewise, White has a long history of criminal conduct. White was arrested in 1992 (at age 17) and later convicted of possession of cocaine in Orleans Parish.[51] White's probation and parole was later revoked.[52] In 1994 (at age 19), White was arrested and later convicted of possession of marijuana and resisting an officer in Jefferson Parish.[53] In 1996 (at age 20), White was arrested and later convicted of possession of a controlled substance in the area of a school and for possession with the intent to distribute a controlled substance in Jefferson Parish.[54] In 2002 (at age 26), White was arrested and later convicted of possession with intent to distribute cocaine in Orleans Parish.[55] White's parole was once again later revoked.[56] In 2005 (at age 29), White was arrested and later convicted of attempted possession of a firearm by a convicted felon in Orleans Parish.[57] Taken together, from 1992 to his arrest in 2011 related to this matter, White's criminal conduct spans almost twenty years. Based on this history White attained the status of a career offender.[58]

After his arrest in September 2011, law enforcement recovered from White's residence three firearms, numerous rounds of ammunition, additional firearm

---

[51] R. Doc. No. 71 (Presentence Investigation Report ("PSR")), at 11. White's criminal history is taken from the PSR, to which White did not object. *Id.* at 1. *See also* R. Doc. No. 82
[52] *Id.* at 11.
[53] *Id.* at 12.
[54] *Id.*
[55] *Id.* at 13.
[56] *Id.*
[57] *Id.*
[58] *Id.* at 9.

14

magazines, and marijuana.[59] These instances demonstrate White's persistent disregard for the law.

The government does "acknowledge[] that White appears to have performed admirably while in BOP custody," relating that White has no disciplinary data and that he has pursued many educational courses.[60] Nevertheless, balanced against White's criminal history, his sentence is also justified as a means of protecting the public from the future crimes that he may commit if released. 18 U.S.C. § 3553(a)(1), (2)(C); *see also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Overall, the nature and circumstances of the instant offense, combined with White's history of lawless behavior, demonstrate that the factors under 18 U.S.C. § 3553(a) do not support his immediate release. *See United States v. Banks*, 2020 WL 5761189, at *4 (E.D. La. Sept. 28, 2020) (Lemmon, J.) (denying compassionate relief where the "goals of section 3553(a) . . . would be undermined by granting this defendant early release.").

### III.

For the foregoing reasons, the Court determines that White has failed to present extraordinary and compelling reasons warranting his release and, even if

---

[59] White admitted to discussing firearms on the day of his arrest in a recorded jail phone call. R. Doc. No. 53 at 5 ("I don't know if they got them guns yet"). In the PSR, to which White did not object, *see* R. Doc. No. 71, at 1; *see also* R. Doc. No. 82, the offense conduct includes a description of three firearms recovered from a residence where White lived by way of a state court search warrant. *Id.* at 8.
[60] R. Doc. No. 199, at 15.

such reasons existed, the Court concludes that compassionate release is not warranted after considering the applicable sentencing factors in 18 U.S.C. § 3553(a). Accordingly,

**IT IS ORDERED** that White's motion[61] for compassionate release is **DENIED**.

New Orleans, Louisiana, July 15, 2021.

                              **LANCE M. AFRICK**
                       **UNITED STATES DISTRICT JUDGE**

---

[61] R. Doc. No. 197.